WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Jesus Humberto Ayala,<br><br>　　　　　Defendant. | No. CR-16-00272-001-PHX-DLR<br><br>**ORDER** |

Defendant Jesus Ayala is charged with transportation of an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(ii) and aiding and abetting an alien to elude the examination and inspection of immigration officers of the United States in violation of 8 U.S.C. § 1325(a)(2). Defendant moved, under the Fourth and Fifth Amendments, to suppress all evidence obtained during a traffic stop for driving too close to another vehicle in violation of A.R.S. § 28-730. (Doc. 25.) After an evidentiary hearing on July 28, 2016, and after viewing a video of the traffic stop, the Court concludes that the officer who initiated the stop did not have reasonable suspicion to believe that Defendant was driving too close to another vehicle. The motion is therefore granted.

**I. Background**

　　**A. The Traffic Stop**

　　On February 12, 2016, while monitoring traffic from the I-10 median, Officer

G.A. of the Arizona Department of Public Safety observed Defendant's vehicle pass and began to pursue it. Officer G.A. traveled at speeds up to 99 miles per hour (mph) to catch Defendant.

During his pursuit, Officer G.A. observed Defendant's vehicle approach a white sedan, change lanes, and then pass the sedan. Officer G.A. estimated that Defendant was approximately three car lengths, or thirty-six to forty feet, behind the sedan before passing it at approximately 75 mph. Officer G.A. believed Defendant was following too close in violation of A.R.S. § 28-730.[1] Before deciding whether to stop Defendant, however, Officer G.A. wanted to view him in his vehicle, so he pulled alongside to view the occupants.[2] After viewing the occupants, Officer G.A. pulled Defendant over.

When Officer G.A. approached Defendant's vehicle on the passenger side, he noticed the passenger was disheveled, which made him suspicious that Defendant was transporting an illegal alien. Officer G.A. ordered Defendant to exit the vehicle and began questioning him about his passenger, while simultaneously writing him a warning for following too close. Defendant admitted that the passenger was an illegal alien and that he was transporting him to Phoenix for $200. Defendant was eventually arrested and read his *Miranda* rights.

**B. Officer G.A.'s Testimony**

Officer G.A. testified he could not recall what first drew his attention to Defendant's vehicle:

> THE COURT: So when the defendant's vehicle drove by something triggered in your mind I should follow that vehicle because something is going on here.

---

[1] Ariz. Rev. Stat. Ann. § 28-730A provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent and shall have due regard for the speed of the vehicles on, the traffic on and the condition of the highway."

[2] Defendant and another passenger, both Hispanic males, were in the vehicle. Officer G.A. testified he saw them but could not identify them as Hispanic.

>   THE WITNESS:  Yes.
>
>   THE COURT:  But you can't tell me what you thought was going on.
>
>   THE WITNESS:  I can't recall specifically what drew my attention to that vehicle.
>
>   …
>
>   THE COURT:  When you left the median you were specifically targeting the defendant's vehicle to follow.
>
>   THE WITNESS:  Yes.

(Hr'g Tr. at 33-34.)  Officer G.A. observed the alleged driving violation as he caught up to Defendant's vehicle:

>   Q.  Okay.  If you could continue.  What did you see?
>
>   A.  The vehicle was ahead of me and I was catching it.  As I caught up to it, it appeared to be approximately three car lengths behind the vehicle in front.  That was the violation in question.

(*Id.* at 14-15.)  Officer G.A.'s vehicle visually recorded the traffic stop beginning at thirty seconds before he activated his emergency lights.

>   THE COURT:  Okay.  So at what point did you determine that he was following too closely to the vehicle in front of him?
>
>   THE WITNESS:  There was the video evidence that he was following too close.  Again, I -- at the time I don't remember specifically if there was a violation before, so when I refer back to my memory I'm comfortable in looking at the video evidence saying that is a violation in itself.

(*Id.* at 35.)  Before initiating the stop, Officer G.A. pulled alongside Defendant's vehicle to view the occupants.

>   Q.  Your reasoning that you stated today for pulling the motorist over is for an alleged violation of following too closely.  Why did you pull up to the side of the vehicle, sir?

- 3 -

> A. That's something I commonly do. I look for other violations. I look to see how many people are in the vehicle. I look for indicators such as furtive movements or maybe body language that would indicate that they're more nervous than somebody that maybe isn't involved in illegal activity.

(*Id.* at 38.) Officer G.A. was ten feet from Defendant as he drove alongside Defendant's vehicle. (*Id.* at 39.) He ultimately stopped Defendant "[b]ecause the vehicle was following too close." (*Id.* at 14.) Officer G.A. estimated that Defendant's vehicle was momentarily about three car lengths, or thirty-six to forty feet, behind another vehicle at 75 miles per hour. (*Id.* at 15-16.) In Officer G.A.'s opinion, Defendant should have been "two seconds" behind the car in front, which is much greater than three car lengths. (*Id.* at 17.) He was unsure, however, if he would have pulled over two white grandmothers for the same driving behavior unless he observed some criminal conduct:

> Q. Now, if you had seen two white grandmas driving that vehicle and a passenger, would you have pulled it over? And these are old grandmas just for my example.
>
> A. I don't know that I -- it's difficult for me to say whether I would pull that car over if -- if there was indicators of criminal activity and there was a older white female driving, that's somebody I would pull over.

(*Id.* at 40.) He later clarified:

> Q. You also said that -- defense counsel asked you whether you would pull this vehicle over if there were two white, old grandmas, grandmothers, in the vehicle, and you said you don't know, it would be difficult to say. Is that right?
>
> A. Yes.
>
> Q. Can you explain to me -- explain to me what you mean by that. Why?
>
> A. When he presented the question to me I was -- I don't take into consideration the race. What I look for is criminal interdictors. I look for -- if there was the driving behavior consistent with a lot of the stuff that was happening, that might be something that I would pull over. I hope I

- 4 -

answered your question.

Q. In answering his question when you referenced –

THE COURT: I'm kind of curious about that.

MR. LOKEY: Go ahead.

THE COURT: So this was a stop that you were making because of the criminal activity you suspected was happening?

THE WITNESS: Yes.

THE COURT: Okay. Not just a traffic stop.

THE WITNESS: Not just a traffic stop.

THE COURT: Okay. And if you hadn't suspected criminal activity you probably wouldn't have stopped them. Is that what you're saying?

THE WITNESS: Yeah. That's correct.

(*Id.* at 63-64.)   Officer G.A. did not identify any "criminal behavior" on the part of Defendant that lead to the stop, other than following too close, which he admitted is not criminal behavior.[3]

---

[3] Q. Just to clarify, though, you do believe you witnessed criminal activity via the traffic violation?
A. Yes.
Q. Okay.
THE COURT: Wait a minute. Let's clear this up.
MR. LOKEY: I can ask that better, Your Honor.
THE COURT: A traffic violation is a civil violation, isn't it?
THE WITNESS: Yes.
THE COURT: It's not criminal.
THE WITNESS: It is not criminal.

(*Id*. at 64-65.)

Officer G.A. did not suspect that Defendant was transporting an illegal alien until after the stop:

> THE COURT: At what point in all the sequence of events did you first suspect that the defendant was transporting a person who was here illegally?
>
> THE WITNESS: Upon the approach, when I greeted the passenger through the open -- excuse me -- the driver through the open front passenger window.
>
> THE COURT: Is it possible you had that suspicion when you saw the vehicle first pass by you when you're sitting in the median there?
>
> THE WITNESS: Yeah, that's not possible.

(*Id.* at 54-55.)

### C. Dashboard Video

The United States submitted Officer G.A.'s dashboard camera video that recorded the final thirty seconds of the view from his vehicle before the stop. (Doc. 35.) During the initial portion of the video, Defendant's vehicle is too far in the distance to determine how close it is behind the other vehicle. After a truck blocking Officer G.A.'s view changes lanes, the video briefly shows Defendant's car following the sedan at a distance of about five car lengths. Defendant's vehicle is then seen merging into the far right lane and passing the sedan.

### II. Analysis

Defendant argues that Officer G.A. did not have reasonable suspicion to stop his vehicle for following too close[4]. The Court concludes, based on Officer G.A.'s testimony and the video evidence, that Officer G.A. lacked reasonable suspicion to believe that Defendant was following "more closely than is reasonable and prudent," in violation of

---

[4] Because the Court finds Defendant's first argument dispositive, it need not address his other arguments.

1   A.R.S. § 28-730, and thus Defendant's motion is granted.

2   "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the
3   Government, and its protections extend to brief investigatory stops of persons or vehicles
4   that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).
5   "Such investigatory stops are justified by 'reasonable suspicion' that criminal activity may
6   be afoot." *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005) (citing *Arvizu*, 534
7   U.S. at 273).  Investigatory stops may also be made when an officer has reasonable
8   suspicion of a traffic violation. *See United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05
9   (9th Cir. 2000) ("the Fourth Amendment requires only reasonable suspicion in the context
10  of investigatory traffic stops"). "Reasonable suspicion exists when an officer is aware of
11  specific, articulable facts which, when considered with other objective and reasonable
12  inferences, form a basis for particularized suspicion." *United States v. Tiong*, 224 F.3d
13  1136, 1139 (9th Cir. 2000). "An officer is entitled to rely on his training and experience
14  in drawing inferences from the facts he observes, but those inferences must be grounded
15  in objective facts and be capable of rational explanation." *Lopez-Soto*, 205 F.3d at 1105
16  (internal quotation marks omitted). Reasonable suspicion is a modest evidentiary
17  standard. *See United States v. Padilla*, No. CR09-658 TUC DUB (CRP), 2010 WL
18  1859988, at *2 (D. Ariz. May 10, 2010).

19  According to Officer G.A., the sole basis for stopping Defendant's vehicle was
20  because he believed it was "following too closely" in violation of A.R.S. § 28-730.
21  Section 28-730 affords officers broad discretion in determining whether a driver is
22  following another vehicle "more closely than is reasonable and prudent."

23  The video shows, and the Court finds, Defendant's vehicle was at least three road
24  stripes, or approximately five car lengths behind the other vehicle during the short
25  duration it was observable to Officer G.A. before it changed lanes. After studying the
26  video, the Court can observe no factual basis for Officer G.A. to reasonably suspect that
27  Defendant was following "more closely than is reasonable and prudent" in violation of
28  A.R.S. § 28-730.

1    The Court is aware of only one other case in this District addressing a similar situation. In *United States v. Millan-Zavala*, No. CR 05-1702-TUC-FRZ (JCG), 2006 WL 2033012, at *2 (D. Ariz. July 17, 2006), the court found that an officer had reasonable suspicion to conduct a traffic stop under A.R.S. § 28-730 where the defendant was driving within twenty feet, less than two car lengths, of the car in front at 65 mph. The officer witnessed the defendant following this close for fifteen to thirty seconds before merging into another lane. *Id.* Based on these facts, the court concluded that the officer had a particularized and objective basis for the stop. *Id.* at 4; *see also United States v. Torres*, 119 F. App'x 874, 876 (9th Cir. 2004) (finding traffic stop valid under § 28-730 where the defendant was following at a distance of five to fifteen feet at 55 mph).

Here, Defendant was following another car at a distance of at least sixty to sixty five feet, more than double the distance in *Millan-Zavala* and several times greater than that in *Torres*. Moreover, the officer in *Millan-Zavala* was able to see the defendant following the car for fifteen to thirty seconds, far greater than the time here, which the Court estimates to be approximately two seconds based on the video. The Court finds that an objectively reasonable officer would not have concluded Defendant was driving too close to the white sedan in violation of § 28-730. *See United States v. Mariscal*, 285 F. 3d 1127, 1130 (9th Cir. 2002) ("Because most people are not such paragons of driving skill and virtue that they consistently adhere to each one of the complex laws relating to the operation of motor vehicles, there are many opportunities to stop targeted vehicles . . . . But those opportunities are not limitless. Suspicions must be reasonable, and they cannot be if they are not sufficient to cause an officer to believe that the driver has done something illegal."). Consequently, the stop was unlawful and any evidence obtained from the stop must be suppressed.[5]

---

[5] The circumstances of the stop arguably suggest a selective enforcement motivation for the stop of Defendant, a large Hispanic male. Officer G.A. could not remember what drew his attention to Defendant's vehicle or why he pursued it. Before initiating the stop, Officer G.A. pulled even with Defendant's vehicle to view the occupants. Officer G.A. would not have stopped a vehicle occupied by two white
*Continued on next page*

**IT IS ORDERED** that Defendant's motion to suppress, (Doc. 25), is **GRANTED**.

Dated this 9th day of September, 2016.

*[signature]*

Douglas L. Rayes
United States District Judge

---

*Continued from previous page*

grandmothers for the same driving behavior as Defendant unless he observed criminal activity in addition to the traffic offense. Officer G.A. did not witness any suspected criminal behavior by Defendant until he observed his passenger after the stop. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 813 (1996). Defendant's motion did not raise an equal protection argument, and thus the Court will not address this issue.